CASE NO. 24-2810

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

---

GET LOUD ARKANSAS; VOTE.ORG; NIKKI PASTOR;
and TRINITY "BLAKE" LOPER
Plaintiffs-Appellees

v.

COLE JESTER; *et al*.
Defendants-Appellants

---

Appeal from the United States District Court for the Western District of Arkansas
Fayetteville Division, No. 5:24-cv-05121
The Honorable Timothy L. Brooks, District Court Judge

---

## APPELLANTS' PETITION FOR REHEARING EN BANC

---

Graham Talley, Ark. Bar No. 2015159
gtalley@mwlaw.com
Adam D. Franks, Ark. Bar No. 2016124
afranks@mwlaw.com
Sarah Gold, Ark. Bar No. 2024081
sgold@mwlaw.com
**MITCHELL, WILLIAMS, SELIG, GATES & WOODYARD, PLLC**
425 West Capitol Avenue, Suite 1800
Little Rock, Arkansas 72201
Phone: (501) 688-8800 Fax: (501) 688-8807

*Attorneys for Cole Jester; Sharon Brooks; Jamie Clemmer; Bilenda Harris-Ritter;
William Luther; James Harmon Smith, III; and Johnathan Williams*

i

# RULE 40(b) STATEMENT

This case warrants en banc review because the divided panel's decision adopts a heightened definition of materiality that splits from opinions of other United States Courts of Appeals. Fed. R. App. P. 40(b)(2)(C); *Pa. State Conf. of NAACP Branches v. Sec'y Commonwealth of Pa.*, 97 F.4th 120, 131 (3d Cir. 2024); *Vote.org v. Callanen*, 89 F.4th 459, 489 (5th Cir. 2023); *Fla. State Conf. of NAACP v. Browning*, 522 F.3d 1153, 1175 (11th Cir. 2008). Further, the decision implicates states' authority to regulate voter registration and protect the integrity of the electoral process, thereby raising a legal question of exceptional importance. Fed. R. App. P. 40(b)(2)(D).

# TABLE OF CONTENTS

Page

Rule 40(b) Statement ...................................................................................... ii

Table of Contents ........................................................................................... iii

Table of Authorities ........................................................................................iv

Background ......................................................................................................1

Argument..........................................................................................................1

   I.  The Panel's Decision Conflicts with Other Courts of Appeals on the
      Meaning of "Material." ................................................................................1

   II. Protecting the Integrity of the Voting Process Is an Issue of Exceptional
      Importance ..................................................................................................6

Conclusion .......................................................................................................8

Certificate of Compliance ..............................................................................10

Certificate of Service .....................................................................................11

# TABLE OF AUTHORITIES

Cases

*Aerotek, Inc. v. Boyd*, 624 S.W.3d 199 (Tex. 2021)....................................................7

*Basic Inc. v. Levinson*, 485 U.S. 224 (1988) ...............................................................4

*Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647 (2021)....................................4

*Carson v. Simon*, 978 F.3d 1051 (8th Cir. 2020)......................................................8

*Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181 (2008)................................6

*Fla. State Conf. of NAACP v. Browning*, 522 F.3d 1153 (11th Cir. 2008)…ii, 2, 3, 5

*Goff v. Harper*, 60 F.3d 518 (8th Cir. 1995)...............................................................4

*John Doe No. 1 v. Reed*, 561 U.S. 186 (2010)............................................................6

*Kendall v. Balcerzak*, 650 F.3d 515 (4th Cir. 2011)................................................7

*Kungys v. United States*, 485 U.S. 759 (1988) .........................................................4

*Miller v. Thurston*, 967 F.3d 727 (8th Cir. 2020).....................................................6

*Neder v. United States*, 527 U.S. 1 (1999)................................................................4

*Pa. State Conf. of NAACP Branches v. Sec'y Commonwealth of Pa.*, 97 F.4th 120 (3d Cir. 2024) .............................................................................. ii, 1, 3, 5

*Perkins v. City of West Helena*, 675 F.2d 201 (8th Cir. 1982) ...............................3

*Purcell v. Gonzalez*, 549 U.S. 1 (2006) ......................................................................6

*Reed v. Town of Gilbert*, 576 U.S. 155  (2015) .........................................................8

*Thompson v. DeWine*, 976 F.3d 610 (6th Cir. 2020)................................................7

*United States v. Taylor*, 159 F.4th 1136 (8th Cir. 2025) ..........................................7

*Vote.org v. Callanen*, 89 F.4th 459 (5th Cir. 2023).............................................. ii, 2, 5

<u>Statutes</u>

52 U.S.C. § 10101 ..................................................................... 1, 2, 3, 5

Ark. Code Ann. § 7-5-404 ...............................................................5

Fla. Stat. § 97.053 ........................................................................7

Ga. Code § 21-2-381 ....................................................................7

Okla. Stat. tit. 26, § 4-112 ............................................................7

Tex. Elec. Code § 13.143 ..............................................................7

## BACKGROUND

Appellees sued to enjoin the Arkansas State Board of Election Commissioners from enforcing Arkansas's original signature requirement for voter registration applications. The district court found that Appellees were likely to succeed on the merits and entered a preliminary injunction. The panel affirmed over Judge Stras's dissent.

## ARGUMENT

**I.     The Panel's Decision Conflicts with Other Courts of Appeals on the Meaning of "Material."**

The Materiality Provision prohibits denying the right to vote based on an error or omission that is not "material in determining whether [an] individual is qualified under State law to vote." 52 U.S.C. § 10101(a)(2)(B). The inquiry under the statute is whether a requirement is relevant to an individual's qualifications to vote, *not* whether it is essential, or the best available method.

Other Courts of Appeals have adhered to this understanding. The Third Circuit has held that the phrase "in determining" describes the process of evaluating voter eligibility, meaning that the requirement at issue need only relate to that process. *Pa. State Conf. of NAACP Branches*, 97 F.4th at 131. Similarly, the Eleventh Circuit has determined that the Materiality Provision "does not establish a least-restrictive-alternative test" and does not require that a rule be indispensable to

eligibility determinations. *Browning*, 522 F.3d at 1175. The majority opinion does not meaningfully engage with these decisions.

Indeed, the Fifth Circuit has rejected the very approach the panel adopts here. In *Callanen*, the Fifth Circuit held that an original signature requirement was "material" because it was relevant to verifying voter identity and ensuring that applicants are who they claim to be. 89 F.4th at 489. The Court emphasized that a requirement need only "matter[]" in the process, and that an original signature "meaningfully, even if quite imperfectly, corresponds to the substantial State interest of assuring that those applying to vote are who they say they are." *Id.* The Fifth Circuit expressly rejected definitions imposing a higher bar for materiality. *Id.* at 478 ("We reject 'essential' as a reasonable meaning, but the rest of the variations seem about right."). The Materiality Provision fairly incorporates a broader range of relevance: to say that something is "material" typically means that it matters.

While relying on portions of *Callanen*, the panel departed from this core holding of the Fifth Circuit. By its plain language, the statute does not require that every regulation itself prove that a voter is a person, a state citizen, or is over the age of eighteen. A registration requirement that promotes and protects valid state interests is a "material" requirement "in" the registration process. 52 U.S.C. §10101(a)(2)(B). This interpretation is consistent with the statutory text and its legislative history indicating that the Materiality Provision was intended to prevent

2

interference with registration based on minor or irrelevant errors used to disqualify Black voters. *Pa. State Conf. of NAACP Branches*, 97 F.4th at 132-33.

The broader statutory context reinforces this reading. Section 10101(a)(1) makes clear that the statute's focus is on protecting the right of "qualified" citizens "to vote at all . . . elections[] without distinction of race, color, or previous condition of servitude." The surrounding provisions target specific discriminatory practices— prohibiting unequal application of "any standard, practice, or procedure" and the use of "literacy test[s]," both of which were methods of disenfranchising Black voters in the Jim Crow South. *See* 52 U.S.C. §10101(a)(2)(A), (C); *Shelby County v. Holder*, 570 U.S. 529, 536 (2013); *Perkins v. City of West Helena*, 675 F.2d 201, 210-11 (8th Cir. 1982).

As Judge Stras's dissent explains, what becomes clear from reading these provisions together is that states have a legitimate role to play in determining who is qualified to vote, but not as a pretext for racial discrimination. Op. 19. Materiality thus turns on relevance: whether a registration rule is related to determining "a voter's qualifications or just a discriminatory requirement masquerading as a legitimate one." *Id.* (citing *Browning*, 522 F.3d at 1174; *Pa. State Conf. of NAACP Branches*, 97 F.4th at 137).

Rather than asking whether Arkansas's original signature requirement is relevant to determining voter qualifications, the panel required evidence that the type

of signature actually affects eligibility determinations. In so doing, it concluded that the requirement was immaterial because "no county clerk uses it to detect fraud"[1] and because other methods might serve similar purposes. Op. 23. This imposes a heightened standard that other circuits have expressly rejected. By requiring evidence that the rule has "influence or effect" on decisionmakers and applying a "demanding" standard, Op. 8, the panel effectively converts the Materiality Provision into a least-restrictive-alternative test—precisely what *Browning* rejected. *See Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647, 686 (2021) (recognizing that a state "may take action to prevent election fraud without waiting for it to occur and be detected within its own borders").

As Judge Stras's dissent also notes, this framework misstates the inquiry. Op. 23. The question is not whether a requirement is always used or is the most effective tool available, but whether it is "*capable* of influencing" voter eligibility determinations. *See Neder v. United States*, 527 U.S. 1, 16 (1999) (emphasis added and citation omitted) (defining "material" as "capable of influencing" a person); *Kungys v. United States*, 485 U.S. 759, 771 (1988) (focusing on "whether the [information is] *predictably capable* of affecting . . . the official decision" (emphasis added)); *see also Basic Inc. v. Levinson*, 485 U.S. 224, 234-35 (1988) (explaining

_____

[1] And, by insisting that Appellants present evidence that wet signatures are used to detect fraud, the panel turned the preliminary injunction standard on its head. *See Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995).

that, in the securities-fraud context, the focus of the "materiality requirement" is on what a "reasonable investor" would think).

Under this applicable standard, Arkansas's requirement is material. A handwritten signature confirms that an applicant is a real person, links the applicant to the application, and provides a mechanism—however imperfect—that is capable of influencing the process of determining whether an applicant is qualified to vote. *See* 52 U.S.C. § 10101(a)(2)(B); *Browning*, 522 F.3d at 1174; *Pa. State Conf. of NAACP Branches*, 97 F.4th at 137 (noting that the Materiality Provision "target[s]" the discriminatory rejection of registration forms based on "irrelevant mistakes"); *Callanen*, 89 F.4th at 482 (explaining that the materiality provision "was written . . . to capture well-disguised discrimination"). Further, because Ark. Code Ann. § 7-5-404(a)(2) requires a clerk to compare an absentee ballot application (which must be signed) with the voter's "registration application," the original signature requirement serves a practical purpose—a handwritten signature on the registration application is the superior means of comparing an absentee request bearing a written or facsimile signature. (App 83; R. Doc. 53-2, at 7).

The panel instead applied a standard that no other circuit has adopted and discounted Arkansas's interests in voter identity verification, fraud prevention, and administrative uniformity.

5

## II. Protecting the Integrity of the Voting Process Is an Issue of Exceptional Importance.

The divided panel's decision presents an issue of exceptional importance: the extent to which states may adopt procedures to protect the integrity of the election process. The panel's heightened materiality standard threatens to override state authority by subjecting commonplace election regulations to searching judicial review.

Arkansas "indisputably has a compelling interest in preserving the integrity of its election process." *See Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006). That interest includes preventing fraud, deterring mistakes, and ensuring that only eligible individuals participate in elections. *See Miller v. Thurston*, 967 F.3d 727, 740 (8th Cir. 2020); *John Doe No. 1 v. Reed*, 561 U.S. 186, 195-96 (2010). It also encompasses promoting public confidence in elections, which "encourages citizen participation in the democratic process." *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 197 (2008).

The handwritten signature requirement is not a novel or arbitrary regulation. It is a fraud-prevention mechanism. As Judge Stras's dissent details, the evolution from seals to scrolls to handwritten signatures was driven by the need to authenticate documents and prevent fraud. Op. 13-16. Handwritten signatures remain ubiquitous, reflecting a continuing judgment that some documents are simply too important for digital alternatives.

The panel's decision also ignores the concrete fraud vulnerabilities that eliminating the handwritten signature requirement creates. Without a wet-signature requirement, "[a]ll it would take is finding another document with a valid signature, scanning or taking a picture of it, and pasting it in." Op. 21. By contrast, a handwritten signature creates a "literal paper trail leading back to the signer" that can be compared and verified when fraud is suspected. *See Aerotek, Inc. v. Boyd*, 624 S.W.3d 199, 204-05 (Tex. 2021). "Voter fraud is no myth," *United States v. Taylor*, 159 F.4th 1136, 1140 (8th Cir. 2025), and even an imperfect safeguard provides "an added layer of security" that the panel swept aside. *Thompson v. DeWine*, 976 F.3d 610, 614, 618 (6th Cir. 2020) (noting original signatures' ability to "prevent[] fraud by ensuring the authenticity of signatures"); *see also Kendall v. Balcerzak*, 650 F.3d 515, 526 (4th Cir. 2011) (explaining that signature requirements "help[] to make sure that false signatures are not put on the [document] and that unregistered or ineligible voters do not sign it").

Importantly, Arkansas is not the only state that requires handwritten signatures. At least four other states insist on them for voter-registration forms. *See* Fla. Stat. § 97.053(5)(a)(8); Ga. Code § 21-2-381(a)(1)(C)(i); Okla. Stat. tit. 26, § 4-112(B); Tex. Elec. Code § 13.143(d-2). The panel's holding that such requirements are immaterial as a matter of law calls into question voter registration regulations in states outside of this circuit.

7

The implications extend further still. Under the panel's heightened standard, states would lose their ability to enact a wide range of "electoral procedures." *Carson v. Simon*, 978 F.3d 1051, 1062 (8th Cir. 2020). As Judge Stras warns, under a demanding materiality standard, "only the best [election procedures]—those that are important or essential—would survive, approaching how to the narrow-tailoring requirement of strict scrutiny works." Op. 20; *see Reed v. Town of Gilbert*, 576 U.S. 155, 171 (2015). The Materiality Provision "is not an open invitation for courts to supervise elections." Op. 25.

Given the sweeping implications for states' authority over elections, this case warrants en banc review.

## CONCLUSION

For the foregoing reasons, Appellants respectfully request the Court grant the petition and rehear the case en banc.

Dated: April 14, 2026

Respectfully submitted,

Graham Talley (Ark. Bar No. 2015159)
gtalley@mwlaw.com
Adam D. Franks (Ark. Bar No. 2016124)
afranks@mwlaw.com
Sarah Gold (Ark. Bar No. 2024081)
sgold@mwlaw.com
**MITCHELL, WILLIAMS, SELIG,
GATES & WOODYARD, PLLC**
425 West Capitol Avenue, Suite 1800
Little Rock, Arkansas 72201
Phone: (501) 688-8800
Fax: (501) 688-8807

# CERTIFICATE OF COMPLIANCE

I certify that this document complies with the type-volume limitation of Fed. R. App. P. 40(d)(3)(A) because it contains 1,826 words.

I certify that this document complies with the requirements of Fed. R. App. P. 32(a)(5)-(6) because it has been prepared in 14-point Times New Roman font using Microsoft Word for Microsoft 365.

I certify that this PDF file was scanned for viruses, and no viruses were found on the file.

/s/ Graham Talley
Graham Talley

**CERTIFICATE OF SERVICE**

I hereby certify that on April 14, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Graham Talley
Graham Talley